## PURRINGTON *vs.* DUNNING.

Where an administrator, having obtained license from the Judge of Probate to sell the real estate of his intestate, to raise the sum of *eleven hundred dollars*, to pay the *debts* of the intestate and *incidental charges*, the debts being $1077,99, gave a bond preliminary to such sale, in which he recited a license to sell *so much only as would produce the sum of* $1077,99, for the payment of said intestate's *debts*, it was *held*, that such variance between the bond and license, did not invalidate the sale made under them.

Where an administrator has been duly licensed to make sale of the real estate of his intestate, the regularity of his proceedings in making the sale under such license, is not a subject of inquiry by strangers, but only by those who have a title or interest, or claim to have, in the lands sold.

THIS was a writ of entry. The demandant, in proof of his title, read a deed from *William Stanwood* (the admitted owner of the demanded premises on the *6th* of *March*, 1824,) to his son, *Charles Stanwood*, dated on that day, and recorded *March* 11, 1824. He then read a license from the Judge of Probate to *Robert P. Dunlap*, administrator on the estate of the said *Charles Stanwood*, dated the 3d Tuesday of *January*, 1832, to sell so much of the real estate of said deceased as would raise the sum of *eleven hundred dollars*, for payment of debts and incidental charges. He then read a bond, bearing date *Jan.* 18, 1832, signed by the said *Dunlap* and two sureties, which contained the following : " The condition of this obligation is such, that whereas the above bounden *Robert P. Dunlap*, at," &c. " obtained license to make sale of so much of the real estate of said deceased, for the payment of his *debts*, as will produce the sum of *ten hundred and seventy-seven dollars and ninety-nine cents,*" &c. It was then proved that the administrator took the oath prescribed by law, gave legal notice of the intended sale, and conveyed the demanded premises to the demandant, as the highest bidder at the vendue, by deed dated *April* 16, 1832, under which deed the demandant entered.

The counsel for the defendant contended that the bond was not given according to law, as it recited an authority to sell only to the amount of $1077,99 — but the *Chief Justice* instructed the jury that the sale was not thereby rendered irregular ; — and fur-

ther, that it was not competent for the defendant who did not claim under *the intestate,* but under said *William Stanwood,* to object to any irregularity in the proceedings of the administrator in making the sale.

If the above ruling and instruction were not correct, the verdict, which was for the demandant, was to be set aside, and a new trial granted, otherwise judgment to be rendered thereon.

*Fessenden* and *Deblois,* for the defendant, contended that the bond given in this case, not being conformable to the requisitions of *statute* of 1830, *ch.* 470, *sec.* 6, the sale was void. It recites an authority to sell to the amount of \$1077,99, when in truth, no such license was ever granted. The tenant was in possession of the premises, and had a right to require a strict compliance by the administrator, with all the statute provisions in the making of the sale. Without such compliance, the sale was a nullity, so far at least as it regarded the tenant. *Wellman* v. *Lawrence,* 15 *Mass.* 326; *Macy & al.* v. *Raymond & al.* 9 *Pick.* 285; *Parker* v. *Nichols,* 7 *Pick.* 111; *Drinkwater* v. *Drinkwater,* 4 *Mass.* 354; *Gibson & al.* v. *Farley & al.* 16 *Mass.* 280.

The bond cannot be aided by a reference to the list of claims against the estate. There is no authority for such reference.

*Longfellow,* for the demandant, insisted that the bond would have been good had *no sum* whatever been named therein; the objectionable words, therefore, are mere surplusage.

But the defendant, not being an *heir,* nor *claiming under one,* had no right to object to any irregularity of proceeding. *Hale* v. *Cushing,* 2 *Greenl.* 218; *Knox* v. *Jenks,* 7 *Mass.* 488.

MELLEN C. J. — The administrator was duly licensed to sell the estate of the intestate to the amount of *eleven hundred dollars* for payment of *debts* and *incidental charges.* It is contended that the bond given by the administrator is not predicated on the license, but in reality contradicts it. There certainly is no contradiction; in the condition of the bond it is recited that the administrator had been licensed to sell the estate of the deceased to the amount of *ten hundred* and *seventy-seven* dollars and *ninety-nine cents* for payment of the *debts* of the deceased, omitting the

mention of " incidental charges." He was certainly licensed to sell to the *above* amount, being a sum less than that named in the license. Besides, it appears that the above sum· of $1077,99 was the precise amount of the list of claims against the estate, allowed by the commissioners; and to this the recital in the condition must have had reference. We cannot allow this variance as having any effect to invalidate the sale. But if our opinion on this point were different, still there is another ground on which the motion for a new trial must fail, because the report states that the defendant does not claim under the intestate as one of his heirs or in any other manner. It has long been settled that where an executor or administrator has been duly licensed to sell the estate of a testator or intestate, the regularity of his proceedings in making the sale under the license is not a subject of inquiry by strangers, but only by those who have a title or interest, or claim to have in the lands sold. This principle is expressly laid down in the case of *Knox & al.* v. *Jenks,* 7 *Mass.* 488, and a similar principle is recognized in the case in 2 *Greenl.* 218, in respect to the want of a bond. In the above case of *Knox & al* v. *Jenks,* there was no proof that the officer, appointed to make the sale, had been duly sworn. This construction by the Supreme Court of *Massachusetts* of a statute, of which ours is a transcript in relation to the provision we are considering, we feel bound to respect, because our Legislature must be considered as having adopted the construction by enacting the law, almost ten years after that construction had been made. We believe the practice has always been adhered to in this State, conformable to the above construction. There must be

*Judgment on the verdict.*